## Case No. 15,033.

### UNITED STATES v. EIGHTEEN BARRELS HIGH WINES.

[8 Blatchf. 475.] 1

Circuit Court, N. D. New York. June 20, 1871.

INTERNAL REVENUE — DISTILLER — NEGLECT TO MAKE ENTRY AND RETURN—PENALTY—FORFEITURE—WITNESS—EVIDENCE.

1. The penalty for a violation of the thirty-first section of the act of July 13, 1866 (14 Stat. 157), in the neglect, on the part of a distiller,

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

to make entry and return, as required by that section, is not merely the penalty imposed by that section, but also the forfeiture of spirits, &c., provided for by the twenty-fifth section of the act of March 2, 1867 (14 Stat. 483).

2. Where, on the cross-examination of a witness, collateral facts are called out from him tending to create distrust of his integrity, fidelity, or truth, it is competent for the adverse party to ask of the witness an explanation which may show the consistency of such facts with his integrity, fidelity, and truth, although circumstances may thus be proved which are foreign to the principal issue, and which, but for such previous cross-examination, would not be permitted to be proved.

[Cited in U. S. v. Quantity of Tobacco, Case No. 16,106.]

3. Where some, though slight, evidence is given on the part of the United States tending to show a failure to make the true and exact entries and returns required by the said thirty-first section, the burthen is cast upon the claimant to show a compliance with the statute.

[Cited in U. S. v. Quantity of Tobacco, Case No. 16,106.]

4. Where property is seized as forfeited for a violation of the internal revenue law, and is bonded, and returned to the claimant, it becomes subject to forfeiture for causes subsequently arising; but the fact of a condemnation for such subsequent forfeiture cannot affect the question of its liability to condemnation in the suit in which it was so bonded.

[Error to the district court of the United States for the Northern district of New York.]

William Dorsheimer, U. S. Dist. Atty.
C. Carskadden, for claimants.

WOODRUFF, Circuit Judge. It is quite manifest that, under the decision of this court in U. S. v. 36 Barrels of High Wines [Case No. 16,468], all the spirits and other property in the place or building, or within the yard or enclosure, where the same were found, were liable to condemnation, under the forty-eighth section of the act of June 30, 1864, as amended by the ninth section of the act of July 13, 1866 (14 Stat. 111); and, inasmuch as the jury found, as to certain of the spirits, that they were in the possession, custody, and control of the claimants, for the purpose of being sold by them in fraud of the internal revenue laws, it follows that they were rightly condemned. In this respect, the charge of the court was too favorable to the claimants; and it would seem useless to try the cause a second time, when, upon the facts found, the condemnation must be certain, according to the construction, heretofore given in this court, of the effect of placing the spirits in the distillery warehouse, namely, that, although in such warehouse, the spirits are, nevertheless, in the possession, custody, and control of the owner, within the meaning of the said forty-eighth section.

But the case was tried upon the contrary view of the meaning of that section, and of the effect of placing the spirits in the warehouse. As to the spirits there stored, the actual condemnation was adjudged under the

thirty-first section of the act of July 13, 1866 (14 Stat. 157), and the twenty-fifth section of the act of March 2, 1867 (14 Stat. 483); and, in my judgment, these are entirely sufficient to sustain such condemnation. The thirty-first section of the act of 1866 required the claimants, from day to day, to make, or cause to be made, true and exact entry, in a book kept in such form as the commissioner of internal revenue might prescribe, of the number of pounds or gallons of materials used, the number of gallons of spirits distilled, the number of gallons placed in warehouse, with various other particulars specified, and, on the 1st, 11th, and 21st days of each month, to render an account containing these particulars to the assessor. The twenty-fifth section of the act of 1867 makes the neglect to do this a cause of forfeiture of all the spirits made by or for the distiller, and of all vessels used in making the same, and of all materials fit for use in distillation, found on the premises. The fourth count in the information charges, that the spirits seized were made, manufactured, and distilled by the claimants in certain stills, &c.; and that the owner, agent, and superintendent of such stills did neglect and refuse to make true and exact entry and report of the same, and did neglect and refuse, from day to day, to make, or cause to be made, true and exact entry, in a book kept in such form as the commissioner of internal revenue had theretofore prescribed, of the number of pounds or gallons, etc., following, in detail, the particulars specified in section 31. This count the jury found proved, and condemnation, of course, followed. The counsel for the claimants erroneously insists, that the consequence of a violation of this thirty-first section is only fine and imprisonment. The penalty of forfeiture of the spirits, vessels, stills, boilers, and materials is added by the twenty-fifth section of the act of 1867.

If, therefore, there was no error in the reception or rejection of testimony, nor in the instructions to the jury in other particulars than are above referred to, the judgment should be affirmed. Evidence of other acts occurring a month before and a month after the seizure in question, indicating an intent to sell and dispose of spirits distilled by the claimants in fraud of the United States, and without the payment of the tax thereon, was objected to as too remote. I do not think it necessary, on this point, to add anything to what was said in U. S. v. 36 Barrels of High Wines [Case No. 16,469]. There, the same point was urged, and the evidence held admissible.

There is nothing, I think, in the objection to the testimony given by way of explanation of the conduct of the witness Avery. It was not given as evidence in chief, to affect the claimants on the questions in issue, but only to avoid the effect of facts elicited by the claimants on their cross-examination. When cross-examining counsel see fit to call out from the witness collateral facts which tend to create distrust of his integrity, fidelity or truth, it is entirely competent and proper for the adverse party to ask of the witness an explanation which may show that the facts thus elicited were, in truth, wholly consistent with his integrity, fidelity and truth, although they thereby prove circumstances foreign to the principal issue, and which, but for such previous cross-examination, they would not be permitted to prove.

On the question whether the hogs and pigs seized were within the place or building, or within the yard or enclosure, where the articles, spirits or materials were found, the jury, upon the distinct question being submitted to them, have found in the affirmative. They might properly so find. The shed or pen in which they were kept, itself formed a part of the enclosing fence surrounding the premises; and it was not for the court to say that the exterior line or side of that shed or pen was not the exterior line of the enclosed distillery yard or premises. I think the finding of the jury must be held conclusive upon that question.

The observations of the court on the state of the proofs were not erroneous. Evidence had been given in behalf of the government, tending to show that the claimants had not made true and exact entries and returns, and the opinion of the court was expressed, that this cast the burthen upon the claimants, to show that they had complied with the statute. From the nature of the case, the proof on this subject was in the possession of the claimants. They knew just how many pounds or gallons of materials they had used, how many gallons they had distilled, and all the other particulars required to be entered and returned. The government had, presumptively, no such knowledge, and were struggling to prove a negative. In such cases, the rule is familiar. Slight proof given by the party who is under such disadvantage, is sufficient to call upon the adverse party, who has the proof in his own hands, to show what is the truth concerning the matter in question.

The subsequent forfeiture and condemnation of certain of the same property, for a subsequent violation of the law could have no effect to defeat the claim of the government in this proceeding. When the property was bonded and returned to the claimants, the lien of the government thereon, for the cause of forfeiture assigned in this proceeding, was gone. The property then remained in the claimants' hands, for all purposes, their own, as much as any property theretofore or thereafter acquired, and it was entirely free from liability to further seizure for the causes herein alleged. But, like any other property, it might be forfeited, if subsequent cause therefor arose, and such forfeiture would be solely by reason of such subsequent cause.

The judgment must be affirmed, with costs.